Whenever you're ready, Mr. Krasny. Thank you. Good morning. May it please the court, my name is James Krasny and I represent the defendant Luis A. Garcia-Pagan. Mr. Pagan has raised three issues before the court. The first is the failure to have a co-defendant, Urbana Robles, brought into his trial to testify on his own behalf. And it has two aspects to it. One was whether or not he was constitutionally deprived of his right to present witnesses on his own behalf. And further, the ineffective assistance of counsel in failing to secure, through a habeas corpus, the presence of Mr. Urbana Robles. I'd like to deal with the latter point first. The trial was a multi-day trial, and on the 16th of the month in which it was tried, the judge addressed the defense attorney, pointing out to her that she had contact at the marshal's service to find out how to bring in the defendant. She had been given information that a subpoena would work by one person in the marshal's service, and she was given information by another person that a habeas corpus was the appropriate way to do it. The judge told her on December 17th that the appropriate way to do it was the habeas corpus. On the very next day, she presented witnesses that she had placed in a notice of alibi as witnesses on the stand. She was limited to three out of the five that she had named by the court. She never, on that day, brought in a habeas corpus. She never, on that day, brought in a subpoena. She did neither of those two things. Instead, on the day after, when she had concluded her testimony, she then moved to reopen it to be able to bring in Mr. Urbana Robles. And the court told her that she was too late, that secondly, that there would be prejudice in continuing this case, though that was relatively unarticulated on the record. And thirdly… At the very least, it was disruptive of the trial, wasn't it? It certainly would have caused a disruption in the sense that the jurors, Your Honor, would have had to wait for the witness. They would not have been excused. They would have been kept together. And we don't know how long it would have taken to get the witness in. Well, is the disruption of the proceedings a valid ground? It is a valid ground, but it still has to be balanced. I think it's a balancing process with regard to whether or not the person who has to be brought in is so central to a defense that it imperils the defense. If he was this central, he wasn't noticed in the alibi witness list, was he? That's correct. So how would we know on this record whether or not that was a strategic decision? Well, Your Honor, there's two aspects to it. First, as to the first alibi list that she gave, he was a fugitive at that point, so she couldn't very well have put him on anyway. But she certainly should have put him on by the third alibi list when he had been taken into custody and was a co-defendant, and she didn't do that. If she was going to bring him in as an alibi witness. Well, I suspect, Your Honor, that if it was simply strategic, why on earth would she, by the 16th, have inquired of the marshals as to the way to go about bringing him in? And my suggestion is that that might be a matter for a hearing. Well, I think it's sufficiently developed on this record, Your Honor. She is admonished by the court that she should have known better. She's told that before she actually ever moves to bring him in. She's told on the 16th that she did it the wrong way. But I thought that the, well, correct me if I'm wrong, isn't the main emphasis in the briefing with respect to her insistence that he be called, that it was her client who was insisting that he be called? Well, that's correct. But it's her client at that point. It would be inconceivable to me that a defense attorney representing a defendant would not discuss with the defendant whether or not a co-defendant was necessary to his defense and point out all the difficulties with that nevertheless, that he could take the fifth, for example, and we wouldn't know. That's really what I'm asking you. I don't know whether any of those things happened or not. Wouldn't that be something for a hearing? It perhaps could be, but I think on this record it's certainly sufficient because you have the fact that she never moved for it before. Certainly a last minute request by counsel, if that's all it was, suggests to me it's ineffective not to have seen the possibilities that a co-defendant could have testified. But certainly the fact that she asked about it two days earlier had to mean at least that it was on her mind. Am I bringing this guy in or not? And she didn't. Then when she's told by the court with enough lead time, her case isn't yet begun, that you're not doing it the right way. You have to have them in and you should know better. And she does nothing to do that. She hasn't even taken the effort of protecting her client's interest so that if she had discussed it with her client and he said, look, I want this guy in and she thinks that's a bad idea, she at least could get the hay about there so that he's physically present at the time when she turns to the client and says, I still think it's a bad idea, and he says, I want him on no matter what. You still need to show prejudice in the district court in denying the request for extra time. Both points to the lateness of it, but also to the fact that he doesn't see prejudice because of the uncertainty about what the witness would testify or whether he would testify. Could you just speak to that because that actually will address both of your, that's a potential obstacle to both of your arguments, right? That's speculative. The judge opines that if I put him on the stand and he said Mr. Garcia Pagan wasn't there, then he's going to be asked correctly by the government, well, who was there, and he's not going to tell us. That nobody can know. But nobody can know the opposite. So how does that factor into whether there's prejudice? Well, we do know that Mr. Urbina-Robles is there and can testify to his being there and who was there. We don't know whether or not Mr. Urbina-Robles would or would not take the fifth. The judge opines that he would, but we don't have counsel there on behalf of Mr. Urbina-Robles to assert, judge, I'm going to instruct my client. My question, though, is let's say you're right that there's uncertainty on that point. So how does that affect the prejudice analysis? I think it affects the prejudice analysis, Your Honor, in that no one would know until Urbina-Robles took the stand whether or not it would or would not be helpful or harmful or neutral in the sense that he takes the fifth. Did she make a proffer about what he would say? She indicated at one point, and I do quote it in the brief, that he said that he would testify that my client wasn't there. But no elaboration on that, no pointing out whether or not he would testify that someone else was there. I suspect, Your Honor, that she was not able to talk to him directly while he was represented by counsel, and he was represented by counsel at that point. That also could be a subject for the hearing. Well, and she also requested that counsel be there. That's correct. Even the phrase you used, I suspect that that might have happened. That would be the kind of thing that if it was important, that's what you'd have in evidence you're hearing to try and figure out. Even if you're right that you don't need the hearing on the ineffective part as to the prejudice, it sounds like a hearing would be helpful. Well, if that's the way the court feels, then that's the way it feels. I think the record's sufficient, and I've argued why I do, perhaps unsuccessfully, given Your Honor's point of view. The other ineffective assistance of counsel, though, I also think – Before you go further, does he state for the record why he waited so long even after being told point blank that he should proceed with habeas corpus? No. There's nothing to indicate – There's nothing in there? She says that I made the inquiry. You shouldn't fault the client for my error. She says that directly to the court in response to the court. But there's no explanation for why the delay. And frankly, there can't be any. I mean, if I'm told by a court that I haven't done it correctly and I've got a day in which to do it correctly, I do it correctly. If I'm not sure which of the contrary pieces of advice I get from a U.S. Marshals Service, I do both of them. What's the harm in sending out a subpoena and a habeas corpus only to be told that one was unnecessary? It does no harm as long as you get the witness there. So as far as I'm concerned, ineffectiveness screams out on this record as a constitutional matter. And it also does with regard to the sentencing. She, when asked if she wants to say anything at all in favor of her client, all she says was, he went to trial because he claims his innocence and he still does. She mentioned nothing that he's married with three children. She mentioned nothing that he had two operations. She mentioned nothing that he was younger than her being a rogueless. She never contradicted the court when the court said that he was a leader when rogueless was clearly acknowledged to be the leader all the time. And no statement that that was true of Garcia Pagan. She never contradicted the court when he added two points for Mr. Garcia Pagan's leadership role. She never pointed out that Erbil and Rogueless had a history category of six and that Mr. Garcia Pagan had a history category of three. There was much to argue to this court factually, of a factual nature, about her client to plead his case and give the court perhaps only momentary pause, which might not have affected the courtage sentence at all. But certainly we have no light being shed as to why the court gave Mr. Garcia Pagan five more years than Mr. Erbil and Rogueless, except that Mr. Pagan exercised his right to trial. I'm sorry. That's already built into the guidelines. Erbil and Rogueless got three points for acceptance of responsibility because he pled. Garcia Pagan went to trial. He had a constitutional right to try to show, unsuccessfully as it turned out, that he had an alibi and that he wasn't there. But constitutionally, one is not penalized for exercising one's constitutional right. A complete analysis of this, the factual basis for the predicate sentence, despite the fact that the court darted his I's and crossed his T's with 3553A through E considerations, and gave a lengthy explanation, as he did for Erbil and Rogueless, there's no reason, there's nothing that appears on this record to justify that increased disparity of the five years, never mind the increased disparity over the range of sentencing provided under the guidelines, except there's no question that whoever did this crime, the crime was heinous, absolutely heinous, and certainly out of the run of the mill. There's no question that it would have deserved an increased sentence over the guideline calculations because of the nature of the crime. But to go five years higher because the man went to trial, that's the only reason that cries out on this record. When asked for further explanation with a motion post-sentencing, there was none. The motion was simply denied. So that as a result, it's ineffective for counsel to stand up there and not take the opportunity to point out the good things about the crime. And that wasn't done at all. That was on the record. How much of what is missing from what could have been said and would be relevant to potentially showing that a different sentence would have been issued is before us on this record, and how much of what's missing is not in the record? I have quoted everything that was in the record about Mr. Garcia-Pagan, and part of your record also includes the sentencing of Mr. Rabino-Robles, so that you have in front of you those facts that the judge considered in the sentencing of Rabino-Robles, and it was the same judge. I guess another way I'm putting it is the facts that you're saying weren't argued by counsel at sentencing. Were those facts available to the judge in any event? Yes, they certainly were in the pre-sentence report. He mentions some of them. But doesn't that mitigate the prejudice? I don't think so, Your Honor. I think there's something different. A judge can pull any facts that he or she wants to show that their sentence falls within the reasonable range of sentences, sufficient but not greater than necessary, complying with the Gaul standard. No question about it. But when a lawyer gets up to advocate for his client, that's his opportunity to wield those facts as strongly as he can to convince the judge that the sentence should be less punitive than is recommended. And what the government recommended was also punitive enough, and the court went over that in Garcia-Pagan's case. And the government itself acknowledged that Garcia-Pagan played role number two out of the three co-conspirators who went in there and committed this heinous crime. What's your thought about whether it's given the heinousness of the crime, and given that the record had those facts in it, that sometimes one can make a strategic choice that maybe my best bet with this judge is not to press things too hard. I think, Your Honor, that within the realm of the appeals court initially suggests some sense. The truth of the matter is that it's not. Why? Because this lawyer has been down in Puerto Rico for some time. That's a small community. And she's argued before Judge Jiménez a lot. He has been a seasoned judge. He's in senior retired status. There is no criminal defense attorney who has any sense at all that doesn't check the range of sentencing with the judge. You already know you've got a heinous crime. You've got to use everything you possibly have to try to convince this judge not to go overboard on this kind of an offense. To simply say strategically I'll be quiet and maybe he won't notice some of the bad facts is impossible, especially after a five-day trial where those bad facts come out in horrific, slow, dramatic fashion. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Francisco Bestoso-Martinez for the government. We request that this panel affirm Garcia Pagan's sentence and conviction. Would you mind starting with the last point? Yes. Why the disparity in sentences between the codefendants? Yes. That's precisely where I was going to start on the disparity in the sentence. First of all, the courts have made it clear that the disparity in sentence courts should look at making sure that there's no disparity from a national standpoint, not between codefendants. Certainly that is a part of the analysis, but definitely there is an emphasis on defendants nationwide. And as it was already mentioned here, there is a clear distinction between Urbina Robles and Garcia Pagan in that Urbina Robles pled guilty and Garcia Pagan went to trial. Seems to me like that's the only reason for the higher sentence. Well, no, Your Honor. Then there is the criminal history of Garcia Pagan's, and even though it is true that Urbina Robles was characterized as the leader, that does not mean that Garcia Pagan was any less culpable. Wait. On the first point, criminal history, I thought Urbina is the career offender of the two. So what is it that makes Garcia's criminal history more egregious? I don't think it's a matter of whether or not one's criminal history is more egregious than the other, but it is certainly one component. This wasn't a first-time offender. He has a criminal history, including prior offenses, including armed carjacking and home invasions, which was part of the pre-sentence report. He also showed little respect, a continued disrespect for the law throughout these proceedings, having been given the opportunity to be on bail and during that time violating his parole with the state officials. And then when taken in again by federal authorities, the court receiving word that he was disregarding orders within the facility.  I'm sorry? Well, no, Your Honor, again, that's part of the analysis. But going back to the issue of leadership, even though Urbina Robles was characterized as the leader, the victim in this case viewed Garcia Pagan as the arms and the legs of the operation or as the focused one in the group. And in the evidence it showed just how heinous some of the behavior by Garcia Pagan in this particular offense was to the point of wrapping fishing wire through the underage boy's neck while threatening his father, looking for more things to loot from the home. Does the sentencing explanation focus on his differentially bad behavior in the commission of the crime? There is no explicit explanation between the two defendants. Again, Your Honor, this was the same judge who sentenced both. He sentenced Urbina Robles first, not that far behind in terms of dates. That was certainly something that he had in mind. And, like I said, this was a case of one defendant deciding to go to trial and the other one pleading guilty. And then that added to the other components of the sentencing regime under the 355-3 factors, would certainly put the five-year difference within a reasonable amount, but still make this a reasonable sentence, Your Honor. Just following up on Judge Barron's question, does the record, as far as you know, establish that Mr. Garcia's conduct was more severe than Urbina's? I mean, the judge's references at sentencing seem to be roughly equivalent when he speaks of both. One, he says torture. The other, he says psychological and physical torture. I couldn't tell the difference in terms of their participation in that conduct. I think from a reading of the record, they were pretty much equally culpable. This wasn't a case of Urbina simply by being a leader, being higher in the hierarchy, or having done more heinous acts during the crime. I think both of them showed equally heinous behavior towards the victims in this case, to the point of having already looted over $40,000 in valuables, still holding them for an hour and a half, and including, at a certain point, when the third assailant came downstairs, it was Garcia Pagan who specifically instructed him, you should have killed him before coming down. So that sounds like, in the government series, the plea is the key difference. It is. It's certainly a part of it, Your Honor. I get it. If they're equally culpable, and the difference is one plead and one didn't, that would seem to make the plea pretty critical for the differential sentences. Well, certainly there is a component. So why, in the government's view, does the plea matter? And why is that a – it's a difference. Well, it's a difference. What's the argument for why? Because the way defense counsel puts it is, all that means is the person exercising the right to trial gets treated worse. Obviously the government has a different view of why we should treat the plea as mattering. What is it? Well, from the government's perspective, certainly having a defendant plead guilty saves the government valuable resources, not having to go to trial and prove its case beyond a reasonable doubt before a panel of juries. And it certainly moves the cases and the court's dockets along in a much streamlined fashion and allowing the court to allocate its resources accordingly to those cases that actually warrant such expenses. I've never understood why that makes any difference, constitutionally speaking. From a constitutional standpoint, Your Honor, there is certainly – I'm not sure I can answer that question right now, Your Honor. I could certainly provide further briefing on the matter, but at this point I don't think I'm able to completely answer that question. I have forgotten. Do you recall what the government recommended for a sentence in this case versus Urbina's case? I believe – again, the exact number I do not remember, Your Honor, in terms of the – No, it's in the record. That's okay. In terms of the defendant's claim that his Sixth Amendment rights compulsory process was violated, the government acknowledges and fully supports the proposition that presenting a witness is a fundamental element of due process of law. However, that right is not absolute. The defendant certainly needs to meet certain requirements established by the adversary system in order to protect the integrity of the adversary system, the interests of their efficient administration of justice, and to make sure there is no prejudice to the truth-determining function of the trial process. In this case, the defendant has failed to meet that test. First of all, in terms of its explanation for failure to abide by these requirements established by the court system, the only explanation given is as to its good faith with regards to the procurement through the marshal service for having him at the trial to testify. However, there is no explanation for having waited until after the party is arrested to seek a habeas corpus or even notify him to the government as an alibi witness. He was not included in the alibi witness list in the original, nor the amended one. This, even though Urbina-Rules had already pled guilty to his charges before the amended alibi witness, which included an additional witness, but not Urbina-Rules. In terms of the willfulness of this violation, this court has made it clear that it's never restricted application of this sanction of exclusion to discovery violations that are willful or intended to gain a tactical advantage. And certainly in this case, with regards to the prejudice to the truth-determining function, while true that it may be a prejudice to the truth-determining function to exclude a potential witness for the defendant, it is equally true that that truth-determining function can be afforded by bringing a surprise witness, as was in this case, since he was not formally notified to the government during the trial at all. And the government only came into knowledge of this after both parties have already rested. And with regards to the ineffective assistance of counsel, the counsel claim with regards to the defense counsel's lack of bringing forth certain mitigating factors at the sentencing hearing, the government would note that she did object to the enhancement for a serious bodily injury. She did mention to the court that her client was incestuous, insisting on his innocence, and he stood by that argument, which would have brought into tension had she brought up an argument that the counsel points out in his brief that she should have said that he played a lesser or if not unimportant role in the crime. Obviously, that comes into tension with her client's wish to stick to his claim of innocence. In terms of having the counsels pointing out that the defense counsel should have pointed out that he was married with three children, that he was the chief supporter, there was evidence brought at trial that, yes, he was in a relationship with this woman with three children. However, viewing further in the PSR, it shows that they had since separated. His children, two of them were living with his parents who were, by living with him, they were helping in raising the children. And with regards to arguing for a sentence below the guideline sentencing range, well, I think the facts in this case, and I think the counsels mentioned it earlier, warranted an upward sentence for the culprits in this case. And in this case, a jury found beyond a reasonable doubt that Garcia Pagan had committed the crime along with Urbina Robles. If the panel doesn't have any more questions, the government will rest on its briefs. Thank you.